LNE 3.1.24



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Jonathan S. Tsuei
Assistant United States Attorney
Jonathan.Tsuei@usdoj.gov

36 S. Charles Street
Suite 400
Baltimore, MD 21201-3119

DIRECT: 410-209-4960
MAIN: 410-209-4800
FAX: 410-962-3124

March 1, 2024

<u>Via e-mail</u>
Courtney D. Francik
Assistant Federal Public Defender

USDC- BALTIMORE
'24 MAR 27 AM 11:47

Re:   **United States v. Andre Thompson**
      **Criminal No. JKB-23-0011**

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to your client, **Andre Thompson** ("the Defendant") by the United States Attorney's Office for the District of Maryland ("this Office"). If this offer is not accepted by **March 15, 2024, it will be deemed withdrawn**. If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

### Offense(s) of Conviction

1.   The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Possession of Ammunition by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1). The Defendant admits that he is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense(s)

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the time alleged in the Indictment, in the District of Maryland:

   a. The Defendant knowingly possessed ammunition, as that term is defined in 18 U.S.C. § 921(a)(17);

   b. The Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year, his civil rights had not been restored, and he had knowledge of this status; and

   c. The ammunition affected interstate commerce.

## Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 922(g)(1) | No minimum | 15 years | 3 years | $250,000 | $100 |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court would instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.

Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in **Attachment A**, which is incorporated by reference herein.

    a.  This Office and the Defendant further agree that the applicable base offense level is **20** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(4)(A) because the Defendant committed the instant offense subsequent to sustaining at least one felony conviction of either a crime of violence or a controlled substance offense.

    b.  This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

    Based on the foregoing, the anticipated adjusted offense level is **17**.

7.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level.

8.  Other than as set forth above, no other offense characteristics, sentencing guidelines factors, and potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Joint Recommendation of the Parties

9. At the time of sentencing, the parties will jointly recommend a sentence of **70 months' imprisonment**. The parties may advocate for any period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This parties reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that the parties deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

      ii. This Office reserves the right to appeal any sentence that is below a statutory minimum.

   c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

11. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

12. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of

the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including:

    a. a Beretta, model 92-F, 9-millimeter Luger, bearing serial number BER022138Z; and

    b. approximately twelve (12) rounds of 9-millimeter Luger ammunition.

13. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The Defendant also agrees to waive the 120-day deadline with regard to commencing forfeiture of firearms and ammunition under 18 U.S.C. § 924(d)(1).

14. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

16. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made

during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

18. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

19. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Jonathan S. Tsuei
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-8-24
Date

_____
Andre Thompson

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the Defendant. The Defendant advises me that he understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3.12.24
Date

_____
Courtney D. Francik
Assistant Federal Public Defender

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On August 7, 2022, at approximately 5:42 p.m., Detective William Healey of the Baltimore City Police Department (BPD) was monitoring Closed-Circuit Television ("CCTV") Camera 1991, which is located at the intersection of N. Forest Park Avenue and Windsor Mill Road in Baltimore, Maryland. At that time, Detective Healey observed an individual, later identified as the Defendant Andre Thompson ("Thompson"), wearing a black t-shirt, black shorts, a black hat, and a black drawstring bag on his back standing in the Carrol Gas Station parking lot, located on the southwest corner of the intersection at 2012 N. Forest Park Avenue.

A few minutes after Detective Healey began observing Thompson on CCTV, another individual wearing an orange shirt walked up to Thompson and the two began talking. After a brief discussion, Thompson pulled the black drawstring bag to the front of his body, reached in, and pulled out one large clear bag of suspected marijuana and another smaller bag bearing a sticker with the words "Bag Boys" printed on it. Thompson then opened the large clear bag of suspected marijuana and let the other individual smell it. The individual in the orange shirt walked away and Thompson began transferring the suspected marijuana from the large clear bag into the smaller bag bearing the sticker. When Thompson finished transferring a portion of the suspected marijuana to the sticker bag, Thompson placed the large clear bag back in the black drawstring bag and continued to hold the smaller sticker bag. After a short time, Thompson placed the sticker bag in his back pocket. Thompson then proceeded to a nearby curb in the parking lot, retrieved an additional small clear bag of suspected marijuana from the black drawstring bag, and began rolling and smoking a blunt. During that time, a red car drove by Thompson and Thompson reached into his bag nervously as if he was preparing to retrieve a weapon.

Detective Healey continued to observe Thompson via CCTV and approximately ten minutes later, Thompson began having a conversation with the driver of a silver car that had driven up to one of the gas station pumps. A short time into that conversation, Thompson jumped back from the vehicle and Detective Healey observed the handle of a handgun protruding from the black drawstring bag that Thompson was still carrying. The driver then opened the door quickly and the door hit both the bag and the gun.

Based on these observations, Detective Healey and other officers responded to the area in both marked and unmarked patrol vehicles. When Detective Healey arrived at the gas station and exited his vehicle, Thompson immediately took flight. Thompson crossed over Windsor Mill Road and ran through the grounds of the University of Maryland Rehabilitation and Orthopedic Institute before he was caught and arrested by pursuing officers. During his flight from officers, Thompson was observed throwing the black drawstring bag, which was recovered and an officer immediately felt a handgun inside. A subsequent search of the bag was conducted and officers recovered **a Beretta, model 92-F, 9-millimeter Luger, bearing serial number BER022138Z** loaded with **one (1) round of 9mm Luger ammunition** in the chamber and **eleven (11) rounds of 9mm Luger ammunition** in the magazine. In addition, officers recovered one large clear bag of suspected

marijuana, eight smaller clear bags of suspected marijuana (including the previously-observed bag bearing the "Bag Boys" sticker), and one scale with plant material from the black drawstring bag.

The recovered ammunition meets the definition of ammunition pursuant to 18 U.S.C. § 921(a)(17). Thompson agrees that he knowingly possessed the ammunition. Prior to possessing the ammunition on August 7, 2022, Thompson had been convicted of a crime punishable by imprisonment for a term exceeding one year, his civil rights had not been restored, and he had knowledge of that status when he possessed the ammunition. The ammunition that Thompson possessed affected interstate commerce because it was manufactured outside of the State of Maryland.

All of the above-described events occurred in the District of Maryland.

SO STIPULATED:

_____
Jonathan S. Tsuei
Assistant United States Attorney

_____
Andre Thompson
Defendant

_____
Courtney D. Francik
Assistant Federal Public Defender